1

2

3

4

5

6

7

8
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10

11   MARY CASTEEL,                         CASE NO. C13-5520 RJB

                    Plaintiff,             ORDER DENYING DEFENDANT'S
12                                         MOTION FOR SUMMARY
          v.                               JUDGMENT
13
     CHARTER COMMUNICATIONS INC,
14
                    Defendant.
15

16         This matter comes before the Court on Defendant Charter Communications Inc.'s

17   (Charter) Motion for Summary Judgment.  Dkt. 29.  In this action for disability discrimination

18   for failure to accommodate under the Americans with Disabilities Act (ADA), Charter seeks

19   dismissal of Plaintiff Mary Casteel's (Casteel) claims on the basis that she cannot establish that

20   she is a "qualified individual able to perform the essential functions of the job."  Dkt. 29 at 13.

21   The Court has considered the pleadings in support of and in opposition to the motion and the

22   record herein.

23

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 1

**INTRODUCTION AND BACKGROUND**

On September 4, 2007, Mary Casteel was hired for the position of Retention Specialist with Charter Communications' NW Contact Center in Vancouver, Washington.  Dkt. 30-8.  As a Retention Specialist, Casteel was responsible for retaining customers who sought to disconnect their cable services, which required her to respond to inbound telephone calls, provide high-level customer service, answer questions, and process orders, as well as track and report the results of her retention efforts.  Dkt. 30-9.  Charter employs approximately 400 employees at its Vancouver call center.  Dkt. 34-2.  A large percentage of these employees are Retention Specialists.  *Id.*

Charter expected Retention Specialists to maintain consistent attendance and the Charter Employee Handbook indicates that "[a]bsenteeism, tardiness, and early departures place a burden on other employees, on Charter's business operations, and ultimately on our customers." Dkt. 30-6 at 5.  During her employment at Charter, Casteel performed her job well and as a result of her work performance received a merit increase.  Dkt. 35-2.

In regard to employee disabilities, the Employee Handbook provides that it is Charter's policy to comply with all applicable provisions of the Americans with Disabilities Act (ADA). The Handbook instructs employees to contact Human Resources (HR) if they have a protected disability and feel they need an accommodation in order to perform the essential functions of their job.  The Handbook states that the employee and Human Resources will explore the availability of reasonable accommodations that do not present an undue hardship on the company.  Dkt. 35-1 at 3-4.

Charter's Personal Leave of Absence policy provides for a 30-day unpaid personal leave beyond the amount of leave permitted under the Family Medical Leave Act (FMLA).  Dkt. 30-6

1    at 8.  Personal leave is not guaranteed and is subject to company approval based on individual

2    circumstances, length of employment, and the needs of the business.  *Id.*  Approval of leave

3    requires documentation in the form of a request for leave, and where applicable, personal

4    certification by a health care provider.  *Id.*  In limited situations, and with management approval,

5    employees may be granted additional leave of up to 30 days beyond the initial 30-day period.  *Id.*

6    at 8.  Upon return from extended leave, Charter will attempt to assign the employee to his or her

7    previous job or a comparable one upon their return, if available.  However, there are no

8    guarantees of continued employment.  *Id.*  The Handbook declares that "personal leave of

9    absence may not be granted for more than 60 days in a rolling 12-month period."  *Id.*

10        In November 2008, Casteel began to experience a number of symptoms, including,

11   among other symptoms, extreme fatigue, muscle aches, sleeplessness, headaches, and chronic

12   viral infections.  Casteel was diagnosed as suffering from fibromyalgia.  Casteel requested

13   intermittent leave under the FMLA for a medical condition, which was approved by Charter.

14   Dkt. 30-1 at 18-21.  In April 2009, Casteel requested and was granted seven consecutive days of

15   leave.  *Id.* at 23.   Charter also granted Casteel's request that she not be required to work

16   overtime.  *Id.* at 16, 24; Dkt. 35-4.  Between November 15, 2008, and June 27, 2009, Casteel

17   exhausted 385.25 hours of her FMLA leave entitlement.   Dkt. 30-1 at 26.

18        In July 2009, Casteel's condition was diagnosed as Waldenstrom's macroglobulinemia, a

19   form of cancer. Dkt. 30-1 at 25.  This form of cancer is typically treated with chemotherapy.  *Id.*

20   Casteel contacted Charter to request a further accommodation, medical leave from July 14, 2009,

21   through August 15, 2009, to undergo chemotherapy treatment.  *Id*. at 27.  Casteel's medical

22   provider, Dr. Miklos Simon, stated that Casteel's condition commenced on July 6, 2009, and had

23   a probable duration of 6 months.  Dkt. 35-6 at 6.  August 15, 2009 was provided in the health

24

1   care provider certification as the anticipated return-to-work date.  *Id.* at 2.  Casteel's FMLA leave

2   was due to expire in July 2009.  Accordingly, in line with Charter's personal leave policy, an

3   initial 30-day personal leave of absence was granted through August 14, 2009.  *Id*. at 4; Dkt. 30-

4   1 at 29-30.  As of August 15, 2009, Casteel was unable to return to work.  Dkt. 30-1 at 30.

5          On August 21, 2009, Dr Simon wrote a short note stating that Casteel was continuing to

6   undergo treatment for her cancer and that she that she "can return to work on September 15,

7   2009."  Dkt. 35-7; Dkt. 30-1 at 44.  In accordance with Charter's extended personal leave policy

8   Casteel's leave of absence was extended an additional 30 days to September 19, 2009.  Dkt. 35-9

9   at 2.  Casteel was unable to return to work at the end of this leave, September 15, 2009.  Dkt. 30-

10  1 at 38, 45.

11         On September 14, 2009, Casteel provided Charter another note from Dr. Simon stating

12  that Casteel was currently undergoing treatment for her cancer and that she "can return to work

13  on February 4, 2010,"  Dkt. 35-8; Dkt. 30-1 at 45.  Charter's HR manager contacted Casteel on

14  October 6, 2009, and asked her what, if any, accommodation could be provided that would allow

15  her to return to work.  She responded that there was none, since her doctor's note already stated

16  that she could not return before February 4, 2010.   Dkt. 35-9; Dkt. 30-28 at 4.

17         On the same date, October 6, 2009, Charter sent Casteel a notice of termination of her

18  employment.  Dkt. 35-9.  The letter provides as follows:

19         Dear Mary:

20         Our records reflect that you have exhausted 480 hours (in the prior twelve months) of
           Family Medical leave as of July 18, 2009. Our records also reflect that Charter approved
21         a 30 day personal medical leave from July 18, 2009 to August 18, 2009 and an extension
           of that leave for an additional 30 days from August 19, 2009 to September 19, 2009.

22

23         Per our conversation on October 6, 2009, you indicated that you are not able to return to
           work at this time.

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

1    Mary, we are empathetic to your current health situation and sincerely wish you the best.
     However, based on our business needs and the fact that you have exhausted all eligible
2    leave time and are not able to return to work at this time, we are separating you from
     employment effective, October 7, 2009.
3
     Sincerely,
4    Kristin Dillenburg
     Human Resources Coordinator
5    Vancouver Contact Center

6    Dkt. 35-9.

7         In August 2009, during her unpaid leave of absence, Casteel applied for and received

8    short-term disability benefits from Liberty Mutual, Charter's third party administrator of

9    disability benefits.  Dkt. 30-1 at 33-35.  Just prior to her termination, on October 5, 2009, Casteel

10   was awarded long-term disability benefits by Liberty Mutual due to her inability to perform her

11   job.  *Id.* at 35-36.

12        Also in August 2009, Casteel applied for Social Security Disability Benefits.  Dkt. 30-1

13   at 44-45.  The Social Security Administration determined that mental limitations prevented

14   Casteel from performing any work.  Dkt. 30-22.  This finding was supported by a September 29,

15   2009 mental examination of Casteel conducted by Dr. Colin Joseph.  Dkt. 30-5 at 7, 14.  Dr.

16   Joseph concluded that Casteel was suffering from a mood disorder that rendered her incapable of

17   functioning in a work environment for a minimum of 12 months; i.e. until September 2010.  *Id.*

18   at 21-25.  The Social Security Administration ultimately determined that Casteel was entitled to

19   disability benefits beginning December 2009.  *Id.* at 54; Dkt. 30-20.

20        To the present date Casteel has never been released by a healthcare provider to return to

21   work.  Dkt. 30-1 at 34.  Since the termination of her employment in October 2009, Casteel has

22   not worked, sought employment, or applied for any position with any employer.  Dkt. 30-1 at

23

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 5

1  31-32.  Casteel continues to receive disability benefits and chemotherapy treatment for her on-

2  going cancer.  *Id*. at 47-51.

3          On May 6, 2010, Casteel filed a disability discrimination claim against Charter with the

4  EEOC.  Dkt. 35-10.  The EEOC conducted an investigation and determined that there is

5  reasonable cause to believe that there is a violation of the ADA.  Dkt. 35-11.  The EEOC found

6  that Charter was unable to show that providing Casteel with additional leave as a reasonable

7  accommodation for her disability would have been an undue hardship.  *Id.*  Thereafter,  Casteel

8  filed the instant lawsuit, claiming that Charter violated the Washington Law Against

9  Discrimination (WLAD) and the ADA by discriminating against her because of a disability and

10  failing to provide a reasonable accommodation.  Dkt. 1.  Casteel's state law claims were

11  dismissed by stipulation.  Dkt. 23.

12          Charter presently moves for summary judgment on Casteel's remaining ADA claims.

13  Charter asserts that Casteel cannot meet her burden with respect to these claims because she is

14  not a qualified individual able to perform the essential functions of the job.  Dkt. 29 at 13.

15  Defendant contends that the only accommodation that existed was an "indefinite" leave of

16  absence, which is unreasonable as a matter of law.  *Id*. at 13-14.

17                              **SUMMARY JUDGMENT STANDARD**

18          Summary judgment is proper where there is no genuine issue of material fact and the

19  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a)

20  mandates summary judgment against a party who fails to make a showing sufficient to establish

21  the existence of an element essential to the party's case, and on which that party will bear the

22  burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Broussard v. Univ.*

23  *of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 6

1    A party seeking summary judgment bears the initial burden of informing the court of the

2    basis for its motion and of identifying those portions of the pleadings and discovery responses

3    that demonstrate the absence of a genuine issue of material fact.  *Soremekun v. Thrifty Payless,*

4    *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  When the moving party has carried its burden under

5    Rule 56(a) the opposing party must do more than simply show that there is some metaphysical

6    doubt as to the material facts and come forward with specific facts showing that there is a

7    genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87

8    (1986).  An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable

9    fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect

10   the outcome of the suit under the governing law.  *In re Barboza*, 545 F.3d 702, 707 (9th Cir.

11   2008).  When considering the evidence on a motion for summary judgment, the court must draw

12   all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co.,* 475

13   U.S. at 587; *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008).

14                            **AMERICANS WITH DISABILITIES ACT**

15   The Americans with Disabilities Act (ADA) prohibits an employer from discriminating

16   "against a qualified individual with a disability because of the disability."  42 U.S.C. § 12112(a).

17   To state a prima facie case under the ADA, Castell must show that (1) she is a disabled person

18   within the meaning of the ADA; (2) she is a qualified individual, meaning she can perform the

19   essential functions of her job; and (3) Charter terminated her because of her disability.  See

20   *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); *Kennedy v. Applause*, 90

21   F.3d 1477, 1481 (9th Cir. 1996).

22   Charter's basis for seeking dismissal is confined to the second prong.  The ADA defines

23   the second prong of the prima facie case, "qualified individual with a disability," as an

24

1   "individual with a disability who, with or without reasonable accommodation, can perform the

2   essential functions of the employment position that such individual holds or desires." 42 U.S.C. §

3   12111(8).  See also *Nunes*, at 1246.

4          "A leave of absence for medical treatment may be a reasonable accommodation under the

5   ADA."  *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001). See also *Nunes*,

6   at 1246.  "[W]here a leave of absence would reasonably accommodate an employee's disability

7   and permit him, upon his return, to perform the essential functions of the job, that employee is

8   otherwise qualified under the ADA." *Humphrey*, at 1135-36; *Nunes*, at 1247.  Even an extended

9   medical leave, or an extension of an existing leave period, may be a reasonable accommodation

10  if it does not pose an undue hardship on the employer.  See 42 U.S.C. § 12111(9), (10); *Nunes*, at

11  1246; *Norris v. Allied-Sysco Food Servs., Inc.,* 948 F.Supp. 1418, 1438 (N.D. Cal. 1996).  The

12  focus is not on whether the employee is disabled and unable to work during the period of

13  medical leave or on the date of termination.  The focus is whether a leave of absence (here an

14  extension of an existing leave period) would render the employee able to perform the functions

15  of the employment position without imposing undue hardship on the employer.  *Nunes*, at 1247.

16  The ADA does not require an employee to show that a leave of absence is certain or even likely

17  to be successful to prove that it is a reasonable accommodation, but it does require the employee

18  prove that the leave could have plausibly enabled the employee to adequately perform his or her

19  job.  *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001); *Kimbro v. Atl.*

20  *Richfield Co*., 889 F.2d 869, 879 (9th Cir. 1989).

21         The ADA does not require an employer to permit an employee to take an indefinite,

22  lengthy, unpaid leave of absence; i.e., if the employer does not know when the employee will be

23  able to return to duty, the employer is not required to grant an indefinite and lengthy leave.

24

1    *Norris v. Allied–Sysco Food Servs., Inc*., 948 F. Supp. 1418, 1438–39 (N.D. Cal. 1996).  A

2    medical leave is not a reasonable accommodation when it is indefinite.  *Dark v. Curry County,*

3    451 F.3d 1078, 1090 (9th Cir. 2008).

4            Charter seeks summary judgment on the basis that Casteel was requesting an indefinite

5    leave of absence; an unreasonable accommodation as a matter of law.  However, just prior to the

6    date of Casteel's termination, she had requested an extension of her leave of absence until

7    February 4, 2010; the date her medical provider indicated that she could return to work.  See Dkt.

8    35-8.  Despite missing two prior return-to-work dates, the February 4, 2010, date is evidence, at

9    least at the time of the termination of her employment, that an accommodation existed at which

10   time Casteel would be able to return to work.

11           Charter nonetheless argues that it is undisputed that subsequent to her termination in

12   October 2009, Casteel remains unable to work and has not been released to work by any

13   healthcare provider.  Casteel's condition and Charter's actions, however, must be judged at the

14   time of Casteel's termination.  The determination as to whether an individual is a "qualified

15   individual with a disability" must be made as of the time of the employment decision.  *Kimbro*,

16   889 F.2d at 878; *Nowak v. St. Rita High School,* 142 F.3d 999, 1003 (7th Cir. 1998).  If at the

17   time of termination there are plausible reasons to believe that the disability can be

18   accommodated by a leave of absence, the employer is responsible for its failure to offer such a

19   leave.  *Kimbro*, at 878.

20           The record shows that on the date of termination, October 6, 2009, Charter knew that

21   Casteel had been diagnosed on with Waldenstrom's macroglobulinemia, a form of cancer.  Dkt.

22   35-6.  The medical certification indicated the probable duration of this condition as 6 months,

23   starting on July 6, 2009.  *Id*.  Charter was also aware that this cancer was typically treated with

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 9

1   chemotherapy and that Casteel was undergoing treatment at the time of her termination.  *Id;*

2   Dkt. 35-7; Dkt. 35-8.  Charter was also aware that Casteel had exhausted her FMLA leave and

3   two consecutive 30-day periods of unpaid personal leave, the maximum allowed under Charter's

4   personnel policy.  See Dkt. 30-6 at 8; Dkt. 35-9.  In conversation with Casteel on the day just

5   prior to her termination, Charter ascertained that Casteel was unable to return to work on that

6   date, October 6, 2009, and that her healthcare provider indicated she could return to work on

7   February 4, 2010.  Dkt. 35-9.  Other than this brief conversation with Casteel, there is no

8   evidence that Charter attempted to clarify the extent of Casteel's disability or whether Dr.

9   Simon's indication of a return-to-work date of February 4, 2010, was incorrect or speculative.

10   Nor is there any evidence that Charter weighed the hardship that would be imposed on the call

11   center by extending Casteel's leave until February 4, 2010.

12        Charter cannot rely on events occurring post-termination, or those of which Charter had

13   no knowledge, to establish that Casteel was not a qualified individual with a disability at the time

14   of her termination.  These include Dr. Simon's subsequent indication that Casteel's treatment

15   could continue indefinitely and was going worse than expected; Dr. Joseph's diagnosis of

16   Casteel's mental condition; and the fact that Casteel is unable to work as of this date and the fact

17   that she remains undergoing treatment for her cancer.  There are questions of fact as to whether

18   extending Casteel's unpaid personal leave would constitute a reasonable accommodation.

19        Further, the ADA places the burden on the defendant to show that an accommodation

20   would be an undue hardship.  See 42 U.S.C. § 12112(b)(5)(A) (providing that the term

21   "discriminate" includes "not making reasonable accommodations to the known physical or

22   mental limitations of an otherwise qualified individual with a disability who is an ... employee,

23   unless such covered entity can demonstrate that the accommodation would impose an undue

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 10

1   hardship on the operation of the business of such covered identity"); *Nunes*, 164 F.3d at 1247.

2   Here, although Charter argues that Casteel's leave of absence is unreasonable as a matter of law,

3   Charter does not address "undue hardship."  In determining whether an unpaid leave of absence

4   creates a hardship, a court can consider the employer's leave of absence policy to determine

5   what's reasonable.  See *Nunes*, 164 F.3d at 1247.  Here, Charter provided Casteel with leaves of

6   absence consistent with its written Personal Leave of Absence policy.  However, it is also the

7   policy of Charter to comply with the ADA and provide reasonable accommodation to employees

8   with disabilities.  See Dkt. 30-6.  Charter cannot simply rely on its maximum leave policy in

9   terminating Casteel's employment without first considering whether a reasonable

10  accommodation, such as extending unpaid leave, would be appropriate for Casteel.

11          Nor is the fact that Casteel subsequently filed applications for, and received, disability

12  benefits bar her ADA claim.  See *Johnson v. Oregon*, 141 F.3d 1361, 1367 (9th Cir. 1998)

13  (abrogated in part on other grounds in *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,

14  692 F.3d 983 (9th Cir. 2012)); *Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795 (1995).  The

15  "material factual statements" in her disability applications "constitute useful evidence."

16  *Johnson*, at 1368.  This evidence, however, is not conclusive in establishing that Castell would

17  not be able to perform her job given a reasonable finite leave of absence.

18          The determination of whether a proposed accommodation is reasonable under ADA,

19  including whether it imposes undue hardship on an employer, requires fact-specific,

20  individualized inquiry.  In the summary judgment context, a court should weigh the risks and

21  alternatives, including possible hardships on the employer, to determine whether a genuine issue

22  of material fact exists as to the reasonableness of an accommodation under the ADA.  *Nunes*,

23  164 F.3d at 1247.  At the summary judgment stage, the requisite degree of proof necessary to

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 11

1   establish a prima facie case under the ADA is minimal and does not even need to rise to the level

2   of a preponderance of the evidence.  See *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002);

3   *Wallis v. J.R. Simplot Co*., 26 F.3d 885, 889 (9th Cir. 1994).

4          Questions of fact remain as to whether Casteel was a "qualified individual," whether she

5   could have performed the essential functions of a Retention Specialist (or another position for

6   which she was otherwise qualified at Charter) with the accommodation of a medical leave of

7   absence, whether that accommodation would have been reasonable, and whether it would have

8   posed an undue hardship on Charter.  Summary judgment is not warranted.

9                                      **CONCLUSION**

10          For the foregoing reasons, it is **HEREBY ORDERED**:

11          Defendant's Motion for Summary Judgment (Dkt. 29) is **DENIED**.

12          Dated this 23rd day of October, 2014.

13

14

15          ROBERT J. BRYAN
            United States District Judge

16

17

18

19

20

21

22

23

24